## ROBERT PHELPS vs. THE STATE.

### COURT OF APPEALS, TYLER TERM, 1883.

*Murder of the first degree—Evidence.* Note the opinion for a state of proof which authorized, and will support a verdict of murder in the first degree.

*Continuance—Practice.* Continuance should be refused when it appears that the absence witness, if present, was incompetent to testify, (see Moore vs. State, Texas Law Reporter, vol. 2, No. 8, p. 478) or when, in view of the evidence adduced, the absent testimony does not appear probably true, or even if true, likely to have changed the result of the trial.

*Charge of the court.* Note the opinion for comments on the charge of the court in a trial for murder.

Appeal from Hunt County.

*Terhune, Perkins, Gilbert & Perkins, and Brooks & Looney* for appellant.

*J. H. Burts* Assistant Attorney General for the State.

Opinion by Willson, J.

This case is a companion to that of Geo. Moore vs. The State, the judgment in which was reversed and the cause remanded at a former day of this term.

Phelps and Moore were separately indicted and tried for the murder of Sam. Boyd, and were each convicted of murder in the first degree, with the penalty assessed at confinement in the penitentiary for life.

While the two convictions are for the same criminal act, the evidence upon which they are based, and the legal questions involved are essentially distinct and dissimilar in several material respects.

We shall not discuss in detail the numerous errors assigned and ably argued both oral and by brief. Our view of the facts of the case, in our judgment, renders immaterial and inapplicably many of these questions.

In order that we may arrive more directly and intelligible at a decision of this case, we will first state the conclusions of fact which we have deduced from the evidence as presented in the record.

This defendant and Geo. Moore were relatives and intimate confidential friends and associates. They were in the town of Commerce together on the occasion of the first altercation between Moore and Boyd, which occured a few days before the homicide, and had private conferences together immediately after that altercation

They had agreed to leave the county and go west together. They came into Commerce together on the day of the homicide, armed with six-shooters, and remainted together drinking and carousing, and together, they provoked a difficulty with the deceased, and together they shot and killed him. Having accomplished the death of Boyd, they left Commerce together, and together fled the country. They were together and acting together from the inception to the termination of the tragedy, and even up to the time of their arrest in another State, and during the transactions of that fatal day of the killing, this defendant appears to have been the adviser, and to a considerable extent, the controller of his companion, Moore.

This defendant, without any provocation directed towards him, cooley and deliberately shot the deceased in the back, inflicting a mortal wound, which caused the deceased to fall from his horse. Not satisfied with this, he coolly and deliberately, while deceased was engaged in a death struggle with Moore, shot him a second time in the back, inflicting another mortal wound.

When deceased was advancing upon Moore in a threatning manner this defendant, instead of endeavoring in a peaceable way, to prevent the impending danger, encouraged, invited and incited the deceased to continue the attack upon Moore, and immediately placed himself in readiness to shoot and kill the deceased.

The attack of Boyd upon Moore was not of that character which made it reasonably appear, that it was being made with a purpose and intent on the part of Boyd to murder or maim, etc. It was not shown that the quirt, the instrument with which Boyd was assaulting Moore, was a deadly, or even a dangerous weapon, calculated to produce death, or even serious bodily harm; while on the other hand, it was shown that Moore was well prepared to meet the attack of Boyd, being armed with a six-shooter, and in a favorable position to use the same to advantage.

Finding the facts of the case as above summarized, we are of the opinion that in so far as relates to this defendant he is, beyond reasonable doubt, guilty of murder in the first degree as found by the verdict of the jury. We cannot see that the evidence raises the issues of justifiable homicide, manslaughter, or even murder in the second degree. We think the court did not err in refusing his application for a continuance. Lindly was not a competent witness for him, as decided in Moore's case. The facts he stated he expected to prove

by the other witnesses do not appear from the other evidence in the case to have been probably true, and even if true, would not, we think, have changed the character of the homicide, or affected the result of the trial. There was no evidence admitted, which in our opinion, was not clearly competent. Moore's acts, declarations and motives prior to, and at the time of the killing, were admissible against defendant because, in the opinion of the trial judge and in our opinion, the evidence sufficiently showed their common design and purpose to accomplish the death of Boyd. They were connected, and as it were, so closely consolidated with each other by the testimony, as to make the acts and declarations of one, those of the other. As to the acts and declarations of Moore immediately after the killing, while fleeing from the scene of the killing with this defendant, they were clearly a part of the *resgestae*, and admissible as such, if upon no other ground.

Many objections are urged by defendant's counsel to the charge of the court. We regard the charge, taken altogether, as a very able and explicit exposition of the law of the case, and in some respects more favorable to the defendant than he was entitled to under the facts.

It may be, as was remarked in Moore's case, that the language of the charge, in treating of express malice, was not as critically correct as it should have been, and that there was more prominence given to express malice than would, in some instances, be proper; still, we think the charge embraced nothing but sound propositions of law, which were pertinent to the evidence, and there is no error in the charge as was reasonably calculated to prejudice the rights of the defendant. As before remarked we are of the opinion that the facts of this case did not raise the issues of justifiable homicide, manslaughter, or even murder in the second degree, and yet the trial judge gave the defendant the benefit of instructions upon justifiable homicide and murder in the second degree.

We have carefully and thoroughly considered and examined every question presented in the record on behalf of the defendant, and we conclude that no substantial error appears in the proceedings, trial and conviction. We are of the opinion that the defendant has been awarded a fair and impartial trial, and that in accordance with the evidence and the law, he has been not only legally, but justly convicted of murder in the first degree.